**EXHIBIT D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

WILLIAM LOPEZ,　　　　　　　　　　　　　　**MEMORANDUM & ORDER**

　　　　　　　　Petitioner,　　　　　　　　**02-CV-3988 (NGG) (LB)**

　　-against-

DAVID L. MILLER, Superintendent, Eastern
Correctional Facility,

　　　　　　　　Respondent.

----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

　　Having granted William Lopez's Petition for Writ of Habeas Corpus, the court now decides what final remedy to award. For the reasons set forth below, (1) Lopez is immediately and unconditionally RELEASED from New York State ("the State") custody; (2) the indictment pending against him in New York Supreme Court, Kings County is DISMISSED; (3) the State is BARRED from retrying him for the August 31, 1989, murder of Elvirn Surria; and (4) the State shall EXPUNGE Lopez's conviction from its records and all references to him in the public record.

I.　**BACKGROUND**[1]

　　On January 16, 2013, the court granted William Lopez's Petition for Writ of Habeas Corpus. (Jan. 16, 2013, Mem. & Order.) On January 18, 2013, the court entered judgment and ordered Respondent to "release Petitioner William Lopez within sixty days unless New York State has, by that point, taken concrete and substantial steps expeditiously to retry him." (Jan. 18, 2013, Judgment (Dkt. 127).)

---

[1]　The court will discuss only the background pertinent to the issues addressed in this opinion. Additional background can be found in the court's decision granting Lopez's Petition for Writ of Habeas Corpus. (See Jan. 16, 2013, Mem. & Order (Dkt. 124).)

1

Sixty days have passed, and Respondent has not submitted proof of *any* steps (let alone concrete and substantial ones) it has taken to retry Lopez. To the court's knowledge, New York State has done no more than arraign Lopez in the days following the court's grant of Lopez's Petition, during which he was released on his own recognizance with the State's consent. See People v. Lopez, No. 14536-89 (Kings Sup. Ct.). The court must now determine what final remedy to fashion.

## II. SCOPE OF HABEAS RELIEF

The Supreme Court has long instructed that habeas corpus relief must be applied with an eye toward "the ends of justice." Sanders v. United States, 373 U.S. 1, 12 (1963). It also has recognized that federal courts have "broad discretion" in fashioning an appropriate remedy upon a grant of habeas corpus relief. Hilton v. Braunskill, 481 U.S. 770, 775 (1987). The general habeas corpus statute, 28 U.S.C. § 2243, authorizes district courts to dispose of a habeas petition "as law and justice require." Indeed, "a federal court possesses power to grant *any* form of relief necessary to satisfy the requirement of justice." Levy v. Dillon, 415 F.2d 1263, 1265 (10th Cir. 1969) (emphasis added).

This authority gives a federal district court the power to award a particularly "extraordinary remedy": an order that unconditionally releases the habeas petitioner from custody and bars any retrial in state court. Simmons v. Reynolds, 898 F.2d 865, 869 (2d Cir. 1990). In Morales v. Portuondo, 165 F. Supp. 2d 601 (S.D.N.Y. 2001), Judge Chin recognized that

> federal courts have barred retrial of successful habeas petitioners in only the rarest of circumstances. The courts have done so in three situations: (1) where the act of retrial itself would violate petitioner's constitutional rights, for example, by subjecting him to double jeopardy; (2) where a conditional writ has issued and the petitioner has not been retried within the time period specified by the court; and

2

> (3) "where the petitioners had served extended and potentially unjustifiable periods of incarceration before the writ was granted."

Id. at 609 (quoting Latzer v. Abrams, 615 F. Supp. 1226, 1230 (E.D.N.Y. 1985)); see also Jones v. Cain, 600 F.3d 527, 524 (5th Cir. 2010) ("In rare circumstances, a habeas court can end a state criminal proceeding as part of the habeas remedy."); Douglas v. Workman, 560 F.3d 1156, 1176 (10th Cir. 2009) ("Barring a new trial may be . . . a permissible form of relief when 'other exceptional circumstances exist such that the holding of a new trial would be unjust.'" (citation omitted)); Garcia v. Portuondo, 459 F. Supp. 2d 267, 294 (S.D.N.Y. 2006) ("A court may bar retrial . . . even where the constitutional violation is capable of correction, but 'where the petition [has] served [an] extended and potentially unjustifiable period [] of incarceration before the writ was granted.'" (alterations in original) (citation omitted)); cf. United States ex rel. Schuster v. Vincent, 524 F.2d 153, 154, 158, 162 (2d Cir. 1975) (ordering a habeas petitioner's immediate release and absolute discharge where he had been confined in a state hospital for thirty-one years without opportunity for a sanity hearing and he had been in prison for a total of forty-four years).

In Morales, Judge Chin held that the petitioners' due process rights were violated when the state trial court "declined to order a new trial in the face of evidence that another individual had confessed to participating in the murder and exonerated" the petitioners, and granted their requests for writs of habeas corpus. 165 F. Supp. 2d at 602. Ordinarily, such a violation is remedied by a new trial. Nonetheless, Judge Chin ordered that the petitioners be "granted an unconditional discharge" and barred the state District Attorney's Office from re-trying them, and ordered that records be expunged for three reasons: (1) "on the record . . . no reasonable jury could convict [the petitioners] of murder; indeed, the evidence strongly suggests that they are innocent"; (2) the petitioners had "been severely prejudiced by the passage of time[ in that] they 'have served extended and potentially unjustified periods [of thirteen years'] incarceration' and

3

their ability to defend against the charges in any new trial has been hampered, at least in some respects"; and (3) "certain aspects of the District Attorney's Office's handling of this matter are troubling." Id. at 609.

With these legal principles in mind, the court turns to the instant case.

### III. DISCUSSION

Shortly after this court granted Lopez's Petition, the parties submitted letters disputing the appropriate remedy. Lopez asked that the court modify its January 16, 2013, conditional release and "order Mr. Lopez's immediate release and bar the state from retrying Mr. Lopez if it does not take concrete and substantial steps to do so within thirty days." (Jan. 18, 2013, Pet. Ltr. (Dkt. 126) at 2.) Respondent objected to any order barring a retrial, arguing that: (1) the court "has no authority to bar the State from retrying petitioner merely because the State does not comply with a time limit set by the district court"; (2) "there are no circumstances in this case that would justify an order barring a retrial" because "the remedy for [a successful ineffective assistance of counsel claim] is a new trial"; and (3) "[t]he State should be permitted to pursue further investigation of this case [and/or proceed with its appeal to the Second Circuit] rather than to proceed with an immediate retrial." (See Jan. 22, 2013, Resp. Ltr. (Dkt. 128) at 2.) At a January 24, 2013, conference, this dispute became temporarily irrelevant when the parties agreed that Lopez would be arraigned in New York State court on the open indictment, where the State would consent to his release on his own recognizance. The State, however, remained under its obligation to take concrete and substantial steps to try him within sixty days. (See Jan. 18, 2013, Judgment.)

Having considered the parties' positions and the events that have since transpired, the court has determined in its broad discretion that law and justice require that: (1) Lopez be

unconditionally released from State custody; (2) the pending State murder indictment against him be dismissed; (3) the State be barred from retrying him for murder of Elvirn Surria; and (4) the State expunge Lopez's conviction from its records and all references to him in the public record. Three considerations support this conclusion.

First, it is clear that the State has failed to take "concrete and substantial steps . . . to retry" Lopez within the timeframe explicitly required. (Id.) To date, the State has arraigned Lopez on the outstanding indictment, but has not offered any other proof that it intends to promptly retry him. Its silence these past sixty days speaks volumes.

Second, the court is convinced that this is one of the extraordinary cases that warrants an unconditional discharge with no future threat of retrial.[2] For one thing, as mentioned above, aside from a pro forma arraignment, the State has failed to take any action evidencing its desire (or ability) to retry Lopez. See Morales, 165 F. Supp. 2d at 609 (recognizing that federal courts have barred retrials where "a conditional writ has issued and the petitioner has not been retried within the time period specified by the court").

More importantly, the troubling circumstances of this case warrant such an order. As should be evident from its opinion that granted the writ, the court considers this case to be nothing short of exceptional. Without reiterating in detail the basis of its decision, the court has concluded that due to the errors of a State court judge, a State prosecutor, and counsel, Lopez was subjected to an unconstitutional deprivation of liberty for twenty-three years. (See generally

---

[2] Contrary to Respondent's contention (see Jan. 22, 2013, Resp. Ltr. at 2), federal district courts do have the power to prevent retrial, even where the underlying constitutional violation is ordinarily remedied by a new trial. See Garcia, 459 F. Supp. 2d at 294; Morales, 165 F. Supp. 2d at 609; see also DiSimone v. Phillips, 518 F.3d 124, 127 (2d Cir. 2008) ("It is true that in special circumstances federal courts may bar retrial of a successful habeas corpus petitioner without his having first sought protection from retrial in the state courts."). Indeed, in Latzer v. Abrams, 615 F. Supp. 1226 (S.D.N.Y. 1985), cited by Respondent (see Jan. 22, 2013, Resp. Ltr. at 2), the court declined to bar retrial in part because the petitioner had not "served [an] extended and potentially unjustifiable period[] of incarceration before the writ was granted." 615 F. Supp. at 1230. Unfortunately, unlike the petitioner in Latzer, Lopez *has* served an extended and unjustifiable period of incarceration.

Jan. 16, 2013, Mem. & Order.) This weighs strongly against allowing the State to conduct a retrial. See Morales, 165 F. Supp. 2d at 612 (barring retrial in part because the petitioners had "served almost 13 years in prison[] for a crime [the court does] not believe they committed" and the record contained "a number of troubling indications that the prosecution was more intent on protecting a conviction than in seeing that justice was done"). And as evidenced by the State's failure to demonstrate "concrete and substantial" steps taken towards Lopez's retrial, the court finds it virtually impossible that a fair retrial could occur, given that: (1) over twenty-three years have passed since the murder of Elvirn Surria; and (2) all of the prosecution's trial witnesses have died or are missing. This also counsels against allowing a retrial.[3] See id. at 611 (barring retrial where "[o]n this record . . . it is hard to imagine that any reasonable jury could convict").

Any desire by Respondent to "pursue further investigation of this case [and/or proceed with its appeal to the Second Circuit] rather than to proceed with an immediate retrial" does not affect the court's conclusion; if anything, these weigh in favor of allowing Lopez to finally and fully enjoy the liberty he has been deprived of for the past twenty-three years. As to any supposed State "investigation" into the facts of this case, its failure to timely take any meaningful steps since Lopez's arraignment (or, at a minimum, inform the court of any such steps) is telling. And if Respondent succeeds on appeal to the Second Circuit (see Notice of Appeal (Dkt. 133)), then Lopez will placed back into State custody with no retrial necessary. If the court's decision is affirmed, then even more time will have passed, casting even further doubt on the State's ability to conduct a fair and meaningful retrial. The court will not permit Lopez to be subjected

---

[3] Respondent has suggested that the State may attempt to retry Lopez "using the trial testimony of any unavailable witnesses under the former testimony exception to the rule against hearsay" (Jan. 22, 2013, Resp. Ltr. at 1)—that is, it claims it could attempt a retrial based entirely upon a reading of Janet Chapman's trial testimony to the jury. The court cannot imagine how a state prosecutor could stand up in court and claim—in the face of the overwhelming evidence supporting Lopez's innocence—that he committed this crime beyond a reasonable doubt. It was only out of principles of comity and federalism that the court gave the State sixty days to embark on this pursuit, which the State has appropriately declined to do.

to the uncertainty and negative connotations associated with being an indicted murder suspect awaiting trial any longer.

## IV. CONCLUSION

Given the unique and troubling nature of this case, "law and justice" require extraordinary measures. Accordingly, (1) Lopez is immediately and unconditionally RELEASED from any form of State custody; (2) the indictment pending against him in People v. Lopez, No. 14536-89 (Kings Sup. Ct.) is DISMISSED; (3) the State of New York is BARRED from retrying him for the August 31, 1989, murder of Elvirn Surria; and (4) the State shall forthwith EXPUNGE Lopez's conviction from its records and all references to him in the public record.

SO ORDERED.

Dated: Brooklyn, New York  
March 20, 2013

/s/ Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge